UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRENDA GAFFIELD,
                      Plaintiff,

v.                                                              5:05-CV-0936
                                                             (FJS/GHL)
WAL-MART STORES EAST, LP,
                      Defendant.
_____
_____

WAL-MART STORES EAST, LP,
                      Third-Party Plaintiff,

v.

SHEN ZHEN BO AN BIKE CO., LTD.,
                      Third-Party Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LYNN LAW FIRM, L.L.P.                          THOMAS F. SHANNON, ESQ.
Counsel for Plaintiff Brenda Gaffield
M&T Bank Building
101 South Salina Street
Suite 802
Syracuse, New York 13202

O'CONNOR, O'CONNOR, BRESEE & FIRST, P.C.    MICHAEL P. CAVANAGH, ESQ.
Counsel for Defendant and Third-Party Plaintiff
   Wal-Mart Stores East, LP
20 Corporate Woods Blvd.
Albany, New York 12211

SMITH, SOVIK, KENDRICK & SUGNET, P.C.      GABRIELLE M. HOPE, ESQ.
Counsel for Third-Party Defendant Shen
   Zhen Bo An Bike Co., Ltd.
250 South Clinton Street
Suite 600
Syracuse, New York 13202-1252

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

On or about June 28, 2005, Plaintiff Brenda Gaffield, Individually and as Mother and Natural Guardian of Kaylyn L. Gaffield ("Plaintiff") commenced this action[1] against Defendant/Third-Party Plaintiff Wal-Mart Stores East, L.P. ("Wal-Mart") to recover damages for personal injuries that Kaylyn sustained while using a Huffy bicycle purchased at Wal-Mart. (Dkt. No. 1.)  On or about March 21, 2006, Wal-Mart filed a third-party action against Third-Party Defendant Shen Zhen Bo An Bike Co., Ltd. ("Bo An"), the designer and manufacturer of the bicycle's crank and pedal.  (Dkt. No. 12.)

The current motion before the Court results from the fact that, at some point in May or June of 2005, a Wal-Mart employee discarded the bicycle before experts for Plaintiff or Bo An inspected it.  On May 1, 2007, Plaintiff filed a letter brief requesting sanctions against Wal-Mart for spoliation of evidence.  (Dkt. No. 32.)  The Court instructed Plaintiff and/or Bo An to file a formal motion for sanctions.  The Court also requested evidence and further briefing from the parties on a number of issues.  (Dkt. No. 35.)  In compliance with the Court's instructions, both Plaintiff and Bo An filed formal motions for sanctions against Wal-Mart on June 25, 2007.  (Dkt. Nos. 36 and 37.)  Wal-Mart responded on July 16, 2007.  (Dkt. No. 40.)  Both motions have been referred to me for a Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(a) of the Local Rules of Practice for this Court. For the reasons discussed below, I recommend that Bo

---

[1] The action was commenced in Supreme Court, Onondaga County, and removed to this Court, based upon diversity jurisdiction.  Dkt. No. 1.

2

An's motion be granted in part and Plaintiff's motion be denied in its entirety.

**I.      BACKGROUND**

Plaintiff bought a Huffy bicycle from Wal-Mart at its store located in Central Square on August 22, 2003. (Dkt. No. 37, Ex. B, receipt.) That same day, the pedal fell off as Kaylyn was riding the bicycle. Kaylyn was injured and spent the night in the emergency room. (Dkt. No. 37, Ex. B, Customer Statement.)

Kaylyn's father reported the accident to Wal-Mart on August 23, 2003, and returned the bicycle. (Dkt. No. 40, Ex. 4.) Wal-Mart opened a claim and assigned a claim number. The claim form instructed the Wal-Mart employee who submitted the claim to "print an Evidence Tag and attach it to the product. Retain custody of the product until you receive further direction from the Product Claims Unit at CMI[2]." (Dkt. No. 37, Ex. F.)

On August 25, 2003, Jeremiah Sanders of CMI instructed Gregory Niles of Wal-Mart to "put the bike somewhere safe where it will not be repaired or tampered with." (Dkt. No. 40, Ex. 4.) Mr. Sanders' notes of the conversation indicate that they were "prepared in anticipation of litigation." (*Id.*) It is the practice of the Central Square Wal-Mart to retain returned products that have caused injury in a claims cage. (Dkt. No. 37, Ex. E at 33:3-35:1.) The claims cage is located directly behind lay-away. (Dkt. No. 37, Ex. E at 36:22-38:10.) The claims cage does not have a rack in it for bicycles. Instead, returned bicycles are stored in a ceiling rack directly in front of the claims cage, in between the claims cage and the lay-away bins. (Dkt. No. 37, Ex. E at 64:19-65:16, 66:12-67:14.)

---

[2]      "CMI" refers to Claims Management, Inc., which investigates and manages claims for Wal-Mart.

CMI ordered an inspection of the bicycle on August 25, 2003. (Dkt. No. 37, Ex. B, Centro Inspection Agency Report; Dkt. No. 40, Ex. 4.) CMI asked Centro Inspection Agency ("CIA")[3] to determine why the pedal came off the bicycle. Specifically, CMI asked CIA to determine whether there was evidence that "the threads were stripped", whether the pedal had not been completely tightened during assembly, or whether the metal was defective. (*Id.*)

CIA inspected the bicycle on August 26, 2003. (Dkt. No. 37, Ex. B, CIA Report.) CIA's report stated that "the outer two threads of the crank and pedal system are damaged -- pulled out. This is consistant [sic] with the pedal being loose in the crank arm. No signs of physical damage or tampering." (*Id.*) CIA opined that the "cause of failure" was that the pedal was loose in the crank arm. (*Id.*) CIA's report included photographs of the crank and pedal system. CIA's report does not state whether or not the metal was defective. Both CMI and Huffy Bicycles interpreted this report as indicating that the pedal fell off due to improper assembly. (Dkt. No. 40, Ex. 5.)

Between August 25, 2003, and November 7, 2003, CMI attempted to obtain medical records and information from Plaintiff. (Dkt. No. 40, Ex. 10.) Specifically, according to the CMI claims file, Mr. Sanders called and spoke to members of Kaylyn's family on September 3, September 10, September 17, and October 16, 2003. On October 24, 2003, Plaintiff and Mr. Sanders exchanged phone messages. Mr. Sanders left a phone message for Kaylyn's family on October 31, 2003. (Dkt. No. 40, Ex. 4.) On November 7, 2003, CMI closed the file due to Plaintiff's failure to contact CMI. (Dkt. No. 40, Ex. 10.)

On February 17, 2004, a representative of Huffy contacted Victor Sanchez of Wal-Mart to

---

[3] The record does not reflect whether CIA is an independent inspection agency or whether it performs inspections exclusively for Wal-Mart.

4

ask why Huffy had not been put on notice of the claim. (Dkt. No. 40, Ex. 4.) The Huffy representative told Mr. Sanchez that "he was given a report that (the) claim was going to be reported to CPSC[4]. [H]e asked that if claim reopened to put him on notice." (Dkt. No. 40, Ex. 4.)

Apparently as a result of the Huffy inquiry, CMI reopened the file on March 4, 2004. (Dkt. No. 40, Ex. 10.) On that date, Mr. Sanders wrote to Plaintiff to request an update on the status of the claim. (Dkt. No. 37, Ex. C.) In addition to the letter, he called and spoke to Plaintiff. She told Mr. Sanders that she had given all of the medical bills and records to an attorney, who was supposed to contact Mr. Sanders. (Dkt. No. 40, Ex. 4.) Mr. Sanders also faxed a letter to Huffy. The fax cover sheet stated "Kaylyn Gaffield ... Pedal was not properly tightened by assembler; it came off when he rode bike for first time. He had broken tailbone and S1 in vertebrae, included is inspection report." (Dkt. No. 40, Ex. 5.) The letter stated that Mr. Sanders had "been notified that one of our customers has experienced a problem with your product ... Pedal came off bike, he broke his tailbone when landed on ground." (Dkt. No. 40, Ex. 5.) The letter listed the vendor number, UPC code, model number, and serial number of the bicycle and stated that "Store Ast. Mgr Greg Niles has bike." (Dkt. No. 40, Ex. 5.) Mr. Sanders sent a second fax to Huffy on March 4, 2004, that said "please call me and let me know you have received notification of this claim and then again with final disposition of the claim." (Dkt. No. 40, Ex. 5.)

The Huffy representative emailed Mr. Sanders on March 5, 2004. The email stated:

> I am in receipt of your fax ... I spoke with Victor Sanchez in

---

[4] "CPSC" is the Consumer Product Safety Commission. It is not clear from the record how CPSC learned of the accident.

>> your office about this on 2/17/04.  We received a CPSC notice regarding this issue on that date, and that was the first that we had heard of this incident.  Victor forwarded the info regarding this claim, including the CIA inspection.  At that time, CMI had already closed its file due to lack of contact from the claimant.  Victor agreed that this was an assembly issue, and that no follow up was needed on our part.  I can only assume that the claimant has re-contacted you now, and that is why we are seeing this again?  Regardless, since this issue is assembly related, and Huffy did not assemble the pedals onto the crank arms, I must deny your request for tender and indemnification.

(Dkt. No. 40, Ex. 5.)

On May 17, 2004, Plaintiff and Mr. Sanders exchanged phone messages.  (Dkt. No. 40, Ex. 4.)

On May 28, 2004, Plaintiff and Mr. Sanders spoke.  (Dkt. No. 40, Ex. 4.)  According to Mr. Sanders' notes in the claims file, Plaintiff stated that she would fax Kaylyn's medical records to Mr. Sanders.  (*Id.*)

On July 16, 2004, Mr. Sanders left a phone message with Kaylyn asking Plaintiff to call him back.  (Dkt. No. 40, Ex. 4.)  Mr. Sanders also wrote to Plaintiff again.  The letter stated that "(u)pon reviewing the file, it shows our last contact was on 05/28/04.  In order to update the file, we are requesting the status of the above claim."  (Dkt. No. 37, Ex. C.)

On July 28, 2004, Mr. Sanders called Plaintiff.  She was not able to talk and said she would call him back.  (Dkt. No. 40, Ex. 4.)  They spoke on August 5, 2004.  Plaintiff again told Mr. Sanders that she had retained an attorney and had asked that attorney to send paperwork to Mr. Sanders.  (Dkt. No. 40, Ex. 4.)

Plaintiff did not provide CMI with any medical records.  (Dkt. No. 40, Wanken Aff. ¶ 4.) Other than the conversations with Mr. Sanders, Plaintiff's only contacts with Wal-Mart regarding

the incident were on at least three occasions in 2003 and 2004, while she was at the Wal-Mart store, when managers asked her how Kaylyn was doing and she provided them with a brief update on his medical treatment[5]. (*Id.* at ¶ 5.)  Accordingly, CMI closed the file again on October 25, 2004.  (Dkt. No. 40, Wanken Aff. ¶ 4.)

On May 24, 2005, more than nine months after Plaintiff's last contact with CMI, Thomas F. Shannon of the Lynn Law Firm wrote to Mr. Sanders.  He informed Mr. Sanders that Plaintiff had retained his firm in connection with the bicycle accident.  (Dkt. No. 37, Ex. B.)  CMI received the letter on June 1, 2005.  CMI did not notify Wal-Mart of the letter.  (Dkt. No. 40, Wanken Aff. ¶ 5.)

Plaintiff filed this lawsuit on June 28, 2005.  (Dkt. No. 1; Dkt. No. 37, Ex. B.)  CMI received notice of the lawsuit on July 14, 2005, and informed Wal-Mart's in-house counsel the next day.  (Dkt. No. 40, Wanken Aff. ¶ 3.)

Although there is some dispute as to the surrounding circumstances, it is undisputed that Wal-Mart discarded the bicycle in the late spring or early summer of 2005.  Carl Bice, a bicycle assembler for Wal-Mart, testified that he threw away the bicycle sometime between May 2, 2005, and July 2005[6].  (Dkt. No. 37, Ex. D at 13:2-14:5; Dkt. No. 40, DiBlase Aff. ¶ 2.)  Mr. Bice

---

[5] The Court requested that Plaintiff provide "copies of any written communications from Plaintiff to CIA, CMI or Wal-Mart between the submission of the Customer Statement on August 23, 2004, and the filing of (the) Notice of Claim on or about May 24, 2005."  (Dkt. No. 35 at 2.)  Plaintiff did not provide the Court with any such documents.  I, therefore, assume that there were no such communications.

[6] Based on Mr. Bice's testimony that the event occurred relatively soon after Ms. DiBlase became the manager at the Central Square Wal-Mart, I assume that the events occurred in May or June, rather than July.

testified that store manager Bobbie Lynn DiBlase instructed him to throw away a group of bicycles hanging from the ceiling (Dkt. No. 37, Ex. D at 16:5-18) and one bicycle that was hanging in the lay-away area. (*Id.* at 24: 19-26:4.) Although Mr. Bice noticed that the bicycle in the lay-away area had a sign on it instructing employees not to dispose of that bicycle, he did not raise the issue with Ms. DiBlase. (*Id.* at 17:1-11, 18:10-13.) He did mention the issue to a support manager, who "said he would take care of it" and that Mr. Bice should do as he was told. (*Id.* at 17:7-24, 32:7-21.)

Mr. Bice testified that he knows that Ms. DiBlase saw the sign because "(s)he looked right at it" as she "went right down the line" asking "(w)hat's wrong with this bike, what's wrong with this bike". (*Id.* at 18:2-7.)

Ms. DiBlase testified that, although she remembers instructing Mr. Bice to dispose of between 10 and 30 old bike frames, she had no recollection of instructing Mr. Bice to dispose of a bicycle that had a sign on it. (Dkt. No. 37, Ex. E at 21:5-24, 23:15-21.) (Dkt. No. 37, Ex. E at 40:10-14.) Ms. DiBlase testified that the bicycle frames that she instructed Mr. Bice to throw away were in the receiving area, which is in a different room down the hall from the claims cage and the lay-away area. (Dkt. No. 37, Ex. E at 42:24-43:14.) Ms. DiBlase testified that neither Mr. Bice nor anyone else ever pointed out to her that one of the bicycle frames had an evidence tag on it. (Dkt. No. 37, Ex. E at 51:9-16.) Ms. DiBlase affirmed that "[a]t no time in 2005 or before was I made aware of a red Huffy bicycle being kept relating to this incident. I do not recall ever seeing the subject red Huffy bicycle behind the layaway area or in front of the claims area in the store ... At no time, did I ever instruct Carl Bice either directly or indirectly to dispose

of the subject red Huffy bicycle." (Dkt. No. 40, DiBlase Aff. ¶ 5.)

Wal-Mart filed its third-party complaint against Bo An on March 21, 2006, eight to ten months after the bicycle was discarded. (Dkt. No. 12.) There is no evidence in any of the submissions to the Court that Bo An was notified of Kaylyn's accident and claim at any time prior to the filing of the third-party complaint.

## II. DISCUSSION

Spoliation of evidence is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107 (2d Cir. 2001). A federal district court may impose sanctions for spoliation, exercising its inherent power to control litigation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Sanctions for the spoliation of evidence serve "a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Byrnie*, 243 F.3d at 107.

Before a court may sanction a party for spoliation of evidence, the moving party must show that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party having control over the evidence acted with a culpable state of mind; and (3) the missing evidence is relevant to the moving party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential*

9

*Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

### A.   Wal-Mart Was Obligated to Preserve the Bicycle Until Plaintiff and Bo An Had an Adequate and Meaningful Opportunity to Inspect It.

The obligation to preserve evidence arises when "a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126-127 (2d Cir. 1998). However, the duty to preserve evidence does not extend indefinitely. *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007.) Dicta in *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 74 (E.D.N.Y. 2002) suggests that the duty expires after the party in possession of the evidence provides the opposing party with an "adequate and meaningful opportunity to inspect" the evidence. In *Sterbenz*, an insurer retained possession of the car involved in an accident for three months after informing the plaintiff's attorney of the car's location. The court found that those three months constituted an "adequate and meaningful opportunity" for the plaintiff to inspect the vehicle and that "(a)ny detriment suffered by plaintiff was thus the product of her counsel's dilatory and unprofessional handling of the case." In *Townes v. Cove Haven, Inc.*, 2003 WL 22861921, No. 00 CV 5603 (S.D.N.Y. Dec. 2, 2003), the defendants altered the structure of the subject swimming pool one year after the plaintiff filed her complaint. The court held that spoliation sanctions were not appropriate because "(d)efendants' preservation of the pool for two years after the accident afforded Plaintiff a reasonable opportunity to avail herself of the evidence." *Townes,* 2003 WL 22861921 at *4. The Second Circuit has applied a standard similar to that of the *Sterbenz* and *Townes* courts. *Allstate*, 473 F.3d at 457-458 ("not only did the defendant not request that Plaintiffs preserve [the evidence],

10

Hamilton Beach ... affirmatively disclaimed any interest in the evidence.  Hamilton Beach did so, moreover, *after being provided a full opportunity to inspect the items"*)(emphasis added)[7].

Here, Wal-Mart's duty to preserve the bicycle was triggered when Plaintiff returned the bicycle to the store and filed a claim.  At that point, litigation was reasonably forseeable.  Indeed, Mr. Sanders' notes in the claims file were "(p)repared in anticipation of litigation."  (Dkt. No. 40, Ex. 4.)

Mr. Bice discarded the bicycle somewhere between 20 and 23 months after Plaintiff filed her claim.  I find that, by that time, Wal-Mart's obligation to Plaintiff had terminated.  Because Plaintiff did not ever supply medical records to Wal-Mart despite repeated requests and did not contact Wal-Mart for nearly a year before her attorney sent the May 2005 letter, Wal-Mart could have reasonably concluded that Plaintiff did not intend to file suit.  Plaintiff had ample opportunity in the nearly two years between the accident and the filing of the complaint to inspect the bicycle.  Plaintiff did not do so.   Accordingly, Wal-Mart did not have a duty as to Plaintiff and Plaintiff's motion for sanctions must be denied[8].

---

[7]  Plaintiffs cite  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. Oct. 22, 2003).  (Dkt. No. 37 at 3.)  That case holds that "(o)nce the duty to preserve attaches, any destruction of (evidence) is, at a minimum, negligent". *Zubulake* is unpersuasive because it is contrary to the weight of precedent and was decided prior to the Second Circuit's decision in *Allstate*.

[8]  The denial of Plaintiff's motion should not significantly impact her claim. Plaintiff's expert will be able to use the CIA report and photographs to form an opinion about why the pedal fell off of the bicycle.  As noted *infra*, Mr. Sanders and a Huffy representative both believed that the CIA report showed that the pedal fell off the bicycle due to improper assembly.  Bo An's expert was able to opine from the photographs and CIA report that "the subject pedal disengaged because the assembler incorrectly installed the pedal into the crank."  (Dkt. No. 36, Barton

11

Wal-Mart did have a duty as to Bo An.  As noted above, there is no evidence before the Court showing that Bo An was notified of Kaylyn's accident and claim prior to the filing of the third-party complaint in March 2006.  Wal-Mart has not argued that the "notice[9]" to Huffy, and the subsequent communication between Huffy and Wal-Mart, constituted notice to Bo An of the accident and claim.  Thus, Bo An did not have an opportunity to inspect the bicycle before Mr. Bice discarded it in 2005.  Accordingly, Wal-Mart's duty to Bo An had not terminated.   The remainder of this Report and Recommendation will address only Bo An's motion for spoliation sanctions.

      **B.**     **Wal-Mart Was Negligent.**

As noted above, before a party can be sanctioned for spoliation of evidence, there must be a showing that the party acted with a culpable state of mind.  Prior to 2002, "(t)he law in this circuit (was) not clear on what state of mind" was sufficiently culpable.  *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-108 (2d Cir. 2001).   At various times, the Second Circuit had required showings that the party intentionally destroyed evidence, that the party had acted in bad faith, and that the party acted with gross negligence.  *Id.*  Acknowledging that its precedents were inconsistent, the Second Circuit concluded that a case-by-case approach was appropriate.  *Id*.  In *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002), the

---

Aff. ¶ 19.) Moreover, although Plaintiff is not entitled to an adverse inference instruction based on spoliation of evidence, she presumably may introduce evidence at trial that Wal-Mart discarded the bicycle before Plaintiff's expert examined it.

[9]    In fact, as noted above, the "notice" to Huffy apparently came, directly or indirectly, from the CPSC.

Second Circuit held that even simple negligence was a sufficiently culpable "state of mind".

Here, Wal-Mart was negligent with regard to its duty to Bo An in two ways. First, Wal-Mart did not sufficiently protect the bicycle. Other items returned to Wal-Mart that have injured a customer are placed in a claims cage. The subject bicycle, however, was hung from a rack outside of the claims cage in an area near the lay-away section. The bicycle's unsecured location made it susceptible to the misunderstanding that apparently occurred between Mr. Bice and Ms. DiBlase. Second, Wal-Mart did not provide timely notice of the accident and claim to Bo An. This lack of timely notice prevented Bo An from requesting an inspection of the bicycle before it was discarded.

      C.      **The Bicycle Was "Relevant"**.

"When a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from a which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Residential Funding*, 306 F.3d at 109. "By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). In this context, the word "relevant ... means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking (sanctions) must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed ... evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding*, 306 F.3d at 108-109.

Here, Bo An alleges that an inspection of the crank and pedal on the subject bicycle

would have shown that the parts were not defectively designed and manufactured.  A reasonable trier of fact could infer that Bo An's allegation is true.  Both CMI and Huffy interpreted the CIA inspection as showing that the bicycle pedal fell off due to improper assembly.  (Dkt. No. 40, Ex. 5.)  Bo An's expert, Karl E.J. Barton, reached the same conclusion.  (Dkt. No. 36, Barton Aff. ¶ 9-13.)  The CIA report did not state that the metal on the crank and pedal were defective, despite CMI's request for an opinion on that subject.  Accordingly, the bicycle is "relevant" as that term is used in this context.  Thus, Bo An has met its burden and is entitled to a remedy for Wal-Mart's spoliation of evidence.

### D. The Appropriate Remedy Is for Wal-Mart to Pay Bo An's Expert Witness Fees.

Bo An requests that the Court dismiss Wal-Mart's third-party complaint, preclude Wal-Mart's expert evidence of a design or manufacturing defect, or "such other and further relief as the court deems just and proper." (Dkt. No. 36 at 13.)

Dismissal is not warranted here.  Dismissal of a lawsuit as a spoliation sanction is a "drastic remedy" that "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West*, 167 F.3d at 779.  The circumstances here are not "extreme" and may be remedied by less drastic sanctions.  Among those "less drastic" sanctions is *not* preclusion of Wal-Mart's expert evidence: such preclusion would result in *de facto* dismissal. Nor is an adverse inference appropriate, since it too would result in *de facto* dismissal.  *See Zubulake*, 220 F.R.D. at 219.  The appropriate remedy, given that Wal-Mart acted merely negligently, is for Wal-Mart to pay all expert fees incurred by Bo An for the services of

14

Karl E.J. Barton[10].

**WHEREBY**, it is hereby

**RECOMMENDED**, that Plaintiff's motion for spoliation sanctions be **DENIED**; and it is further

**RECOMMENDED** that Bo An's motion for spoliation sanctions be **GRANTED IN PART**.  It is recommended that Wal-Mart be ordered to pay all expert fees incurred by Bo An for the services to date of Karl E.J. Barton.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).


Dated: October 18, 2007
       Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge

---

[10] Wal-Mart might argue that Bo An was going to incur Mr. Barton's fees irrespective of the spoliation, for his inspection and report on the bicycle, if it had been properly preserved.  This might be so, but the sanction nevertheless is appropriate as a deterrence and also because Mr. Barton's expert report and opinion might have been more compelling, and therefore advantageous to Bo An, if he had access to the bicycle.